UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LISSETTE E. ALEJANDRO,
                Plaintiff,

-v-

COMMISSIONER OF SOCIAL
SECURITY,
                Defendant.

17-CV-2906 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Lissette Alejandro, proceeding *pro se*, challenges the denial of her application for social security disability benefits. The Commissioner of Social Security moves for judgment on the pleadings. For the reasons below, the motion is granted.

**I.    Background**

      In October 2013, Plaintiff Lissette Alejandro filed for disability benefits. (Dkt. No. 8 ("Tr.") at 96.) She claimed that beginning in February of that year, at age thirty-seven, she became unable to work due to physical and psychological disabilities including but not limited to depression, anxiety, post-traumatic stress disorder, cervical and lumbar degenerative disc disease, asthma, and irritable bowel syndrome ("IBS"). (Tr. at 98, 101, 329, 557.) A number of treating and consultative physicians and specialists examined Alejandro in the relevant period. Those examinations that are critical to the outcome are summarized below.

      *Dr. Sayegh and Dr. Eizholz.* Dr. Nadeem Sayegh, an endocrinologist, treated Alejandro from December 2010 to August 2015. (Tr. at 882.) Alejandro testified that her initial visits to Dr. Sayegh solely addressed her diabetes. In 2015, when her primary care physician became unavailable for appointments, Dr. Sayegh also began treating her for pain management and high blood pressure. (Tr. at 131.) When the administrative law judge ("ALJ") inquired into the

1

duration and nature of Alejandro's interactions with Dr. Sayegh, Alejandro testified that a nurse "did most" of her physical examination while Dr. Sayegh relied primarily on Alejandro's own accounting of her physical abilities. (Tr. at 130−31.)

In February 2015, Dr. Saygeh noted no musculoskeletal abnormalities. (Tr. at 688.) In May 2015, he referred Alejandro to a pain management doctor for chronic low back pain and to a psychiatrist for anxiety. (Tr. at 711.) In July 2015, Dr. Sayegh recorded anxiety and back pain but observed no depression, difficulty concentrating, or notable musculoskeletal abnormalities. (Tr. at 688−91.) Finally, in August 2015, Dr. Sayegh opined that Alejandro's mental and musculoskeletal ailments, in tandem, rendered her incapable of work. His Functional Capacity Assessment diagnosed Alejandro with anxiety, depression, and chronic neck and back pain expected to last a minimum of twelve months. (Tr. at 882−84.) He noted functional limitations including inability to "function at most times" and to "understand/ comprehend" so as to frequently interfere with attention and concentration. (Tr. at 884.) Alejandro's mental conditions, he found, rendered her incapable of even "low stress jobs" and unable to attend work on a regular basis. (Tr. at 885, 888.) He found that Alejandro's neck and waist were largely immobile, which he estimated would cause her to miss work more than three times per month on average. (Tr. at 887.) He determined her gastrointestinal conditions required ready access to a bathroom. *Id.* Dr. Sayegh also ordered an MRI, which showed that Alejandro's neck condition had worsened since 2008. (Tr. at 899.)

Alejandro also visited Dr. Bryan Eizholz in April 2015. Dr. Eizholz concluded that imaging studies "correlate[d]" with Alejandro's complaints of back pain, and he noted limited range of motion due to pain. (Tr. at 905–06.) Dr. Eizholz recommended injections, but

2

Alejandro declined the treatment. (Tr. at 906). She testified, "I told Dr. Sayegh I wasn't comfortable going to [Eizholz] so Dr. Sayegh is treating me for my pain." (Tr. at 128.)

*Mental Health Treatment.* Throughout the relevant period, Alejandro also sought care from various mental health professionals. (Tr. at 796, 856.) Brenda Delmonte, a social worker at the Open Door Medical Center, met with Alejandro in November 2013 and January 2014. (Tr. at 462, 748.) Delmonte diagnosed Alejandro with dysthymia and general anxiety, and she assigned Alejandro a Global Assessment of Functioning ("GAF") score[1] of 60, indicating moderate difficulty in social, occupational, and school functioning. (Tr. at 462.)

Alejandro also met with social worker Lilian Calahan at least once in 2012, and on four occasions spanning March 2014 to March 2015. (Tr. at 783, 796, 843, 856, 860.) In March 2014, Calahan assigned Alejandro a GAF score of 49, indicating serious impairment in social and occupational functions. (Tr. at 793.) In April of that year, Calahan noted that Alejandro "currently reports that her symptoms interfere with her ability to function in a work environment." (Tr. at 843.)

Finally, Alejandro met with psychiatric consultative examiner Dr. Melissa Antiaris in January 2014. Dr. Antiaris determined that Alejandro had no cognitive limitations in following simple directions and performing simple tasks independently; mild limitations in maintaining concentration and a regular schedule, learning new tasks, making decisions, and relating adequately with others; and moderate limitations in dealing with stress. (Tr. at 562.)

*Other Medical Treatment.* Throughout the relevant period, Alejandro was also treated for mild persistent asthma, chronic diarrhea, and chronic pain. (Tr. at 580, 585−86, 755−56.)

---

[1] The GAF scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004). The GAF scale ranges from 0 to 100.

Consultative opinions and emergency room reports denoted normal strength and moderate to minimal functional limitations due to her neck and back conditions. (Tr. at 397, 567−68, 575, 870.)

In October 2015, the ALJ determined that despite Alejandro's various "severe impairments," her symptoms did not entitle her to disability benefits. The ALJ found that although Alejandro's medical conditions prevented her from performing her past relevant work, they did not preclude her from any possible employment. (Tr. at 106.)

The ALJ assessed that between February 2013 and October 2015, Alejandro retained the residual functional capacity ("RFC") to perform limited kinds of sedentary work. (Tr. at 98−106.) In particular, the ALJ found that Alejandro could perform simple, routine, sedentary work in an eight-hour work day, although her spinal conditions limited her to work not requiring her to climb, and her IBS required that she have ready access to a bathroom and permission to be off-task five percent of the work day. (Tr. at 100.) And because the ALJ found that Alejandro had moderate difficulty with regard to concentration, persistence, or pace, and mild difficulties with regard to activities of daily living, social functioning, and no episodes of decompensation, he determined that Alejandro was limited to simple cognitive tasks. (Tr. at 99−100.) Based on the testimony of a vocational expert, the ALJ identified at least three unskilled, sedentary jobs existing in the national economy that Alejandro could perform. (Tr. at 106−07.) Thus, the ALJ found that Alejandro was not disabled during the relevant period. (Tr. at 107.)

The Appeals Council denied review on March 10, 2017 (Tr. at 1), and Alejandro filed this action on April 20, 2017 (*see* Dkt. No. 1).

## II. Legal Standard

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision

4

is based on legal error." *Shaw v. Chafer*, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405 (g)). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). A court may not substitute its own judgment for the Commissioner's "even if it might justifiably have reached a different result upon a *de novo* review." *DeJesus v. Astrue*, 762 F. Supp. 2d 673, 683 (S.D.N.Y. 2011) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Courts must also afford *pro se* plaintiffs "special solicitude." *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). When a plaintiff proceeds *pro se*, the court should "read [her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). And "[e]ven where a motion for judgment on the pleadings is unopposed, the Court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law." *Graham v. Comm'r of Soc. Sec.*, No. 16 Civ. 142, 2017 WL 1232493, at *1 (E.D.N.Y. Mar. 31, 2017)).

### III. Discussion

To prove disability, a claimant must demonstrate an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment," which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 423(d)(1)(A), (2)(A). "A claimant's RFC 'is the most [she] can still do despite [her] limitations.'" *Barry v. Colvin*, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (alterations in original) (quoting 20 C.F.R. § 416.945(a)(1)).

#### A. Substantial Evidence Supporting the RFC Determination

When more than one rational interpretation of the evidence is available, the Court defers to the Commissioner's conclusion. *See, e.g.*, *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir.

5

2014). In this case, the ALJ carefully considered the record to determine Alejandro's RFC, and his conclusion that Alejandro's physical and mental impairments did not preclude her from any substantial gainful activity was supported by substantial evidence.

With respect to Alejandro's physical limitations, the record provides substantial evidence for the ALJ's conclusion that Alejandro is capable of sedentary work. In August 2013, when Alejandro visited the emergency room for a "heavy neck" and intermittent tingling in her left arm, a nurse noted that she had "no functional limitations." (Tr. at 397.) In January 2014, Dr. Patricia Meyer noted no issues with Alejandro's extremities and described her back and strength as "normal." (Tr. at 575.) And in December 2014, Dr. Elio Ippolito recorded normal strength in all muscle groups, normal range of motion of all joints, and normal motor strength in all extremities. (Tr. at 726.) Furthermore, the ALJ set environmental limitations on the RFC to accommodate Alejandro's asthma and allowed that Alejandro would require regularly scheduled breaks for pain management and ready access to a restroom due to her IBS. (Tr. at 100.)

With respect to Alejandro's mental health, the ALJ identified sufficient evidence to support his conclusion that she had significant, but not disabling, mental limitations. (Tr. at 102−06.) First, the ALJ relied upon Alejandro's own statements denying difficulty engaging socially with either her children's teachers or peers at her church. (Tr. at 121, 124.) Second, the ALJ relied on the opinion of Dr. Antiaris, a psychiatric examiner, who noted only moderate psychiatric limitations. (Tr. at 104.) The ALJ concluded that Dr. Antiaris's opinion was consistent with largely normal mental status findings in the record, indicating normal or mild impairments in speech, memory, attention, concentration, thought processes, insight, and judgment. (Tr. at 104, 461−62, 477, 483.)

### B. Credibility Determinations

#### 1. Subjective Accounts of Symptoms

The ALJ acknowledged that Alejandro's impairments could reasonably be expected to cause her symptoms, but he also found that Alejandro's statements about the "intensity, persistence, and limiting effects" of her medically determinable impairments were not entirely credible. (*Id.*).

"When determining a claimant's RFC, [an] ALJ is required to take the claimant's reports of pain and other limitations into account, but . . . he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). To support a finding of disability, a claimant's subjective experience of pain must be accompanied by "objective medical evidence" showing impairments "which could reasonably be expected to produce th[at] pain." 20 C.F.R. § 404.1529(a); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999).

The ALJ did not err in finding Alejandro's subjective reports of her own symptoms less than credible. First, the ALJ offered reasons why he discounted certain evidence that could have substantiated Alejandro's claims of the severity of her symptoms. The ALJ explained that the possible bilateral lumbar radiculopathy shown in Alejandro's November 2013 electromyogram was unlikely to have produced disabling pain. As the ALJ noted, by the following January, Alejandro's primary care physician described Alejandro's back and strength as "normal" after a physical and neurological exam. (Tr. at 102.) Likewise, although Dr. Eizholz observed arthritis that could cause joint pain and limited range of motion (Tr. at 905–06), Alejandro displayed normal gait and posture, normal strength, and no decreased range of motion during a subsequent visit with Dr. Sayegh. (Tr. at 689).

Second, the ALJ determined that Alejandro's own statements about her daily conduct were inconsistent with her allegations of disability. Alejandro serves as the primary caretaker for her two youngest children, though she receives some assistance from her mother and her eldest daughter. (Tr. at 143–44.) During the relevant period, Alejandro occasionally drove short distances, attended parent-teacher conferences, emailed with teachers, prepared meals two to three times per week, shopped for food, and cleaned with help from her children. (Tr. at 120−23, 143−44.) She went to church every Saturday and walked for exercise. (Tr. at 122, 124, 142−44.)

ALJs are instructed to compare a claimant's daily activities to her allegations in order to assess their credibility. *See* 20 C.F.R. § 404.1529(c)(3)(i) (stating that a claimant's "daily activities" are among the "[f]actors relevant to [a claimant's] symptoms, such as pain, which [the Commissioner] will consider"). A claimant's testimony about her conduct may undermine her claim of disability when her "testimony does not preclude the possibility that she could perform gainful activity of a light, sedentary nature." *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir. 1980). Alejandro's testimony, both in her written application and oral hearing, that she could do light errands inside and outside the home, handle her finances, and socialize with others supports a finding that she was capable of sedentary work. Substantial evidence supports the ALJ's credibility determination.

### 2. Dr. Sayegh's Opinion

The ALJ gave "little weight" to the opinion of Dr. Sayegh, Alejandro's long-time endocrinologist, that Alejandro's mental and physical conditions would cause her to be absent from work more than three times per month. (Tr. at 105, 887.)

ALJs are bound by the "treating physician rule." *Kessler v. Colvin*, No. 14 Civ. 8201, 2015 WL 6473011, at *4 (S.D.N.Y. Oct. 27, 2015) (quoting *Rosa v. Callahan*, 168 F.3d 72, 78

8

(2d Cir. 1999)). That rule mandates that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (alteration in original) (quoting 20 C.F.R. § 404.1527(d)(2)). If an ALJ gives a treating physician's views less-than-controlling weight, an ALJ must give "good reasons." *Snell*, 177 F.3d at 133 (quoting *Schaal*, 134 F.3d at 505). "[T]o override the opinion of the treating physician, [the Second Circuit has] held that the ALJ must explicitly consider, *inter alia:* (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (alterations in original) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

The Court concludes that the ALJ gave adequate reasons for overriding Dr. Sayegh's opinion.[2] First, the ALJ determined that Dr. Sayegh's assessment was inconsistent with his own treatment notes. Although Dr. Sayegh opined that Alejandro would be incapable of even "low stress jobs" (Tr. at 885), his earlier treatment notes indicated that Alejandro had neither depression nor difficulty concentrating (Tr. at 688). His assessment was also inconsistent with his largely normal physical findings. (Tr. at 688−89.)

---

[2] "[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The Court concludes that the ALJ fulfilled his duty to develop the record by requesting additional documents from Alejandro's attorney, including records of an MRI that was scheduled for the following day, and inquiring into the nature of Alejandro's relationship with Dr. Sayegh. (*See* Tr. at 117−18.)

9

Second, the ALJ gave Dr. Sayegh's opinion less weight because he offered opinions outside his area of expertise in endocrinology. "More weight" is afforded to the opinion of a specialist within his specialty than to the medical opinion of a source "who is not a specialist." 20 C.F.R. § 416.927(c)(5). Dr. Sayegh's opinion on Alejandro's disability was based on both her mental and musculoskeletal limitations—neither of which relates to Alejandro's diabetes. Dr. Sayegh claims no expertise in the fields of mental health, pain management, or neurology.

Therefore, the ALJ properly discounted Dr. Sayegh's opinion.

### 3. Mental Health Assessments

The ALJ considered three independent opinions regarding Alejandro's social functioning, which ranged in diagnosis from serious to mild. The ALJ gave "great weight" to the opinion of consultative psychiatrist Dr. Antiaris, who diagnosed Alejandro with only mild limitations, while giving less weight to the opinions of social workers Delmonte and Calahan, who diagnosed more significant limitations. (Tr. at 104−05.)

"[G]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision" as long as he "weigh[ed] all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).

The Court concludes that substantial evidence supports the ALJ's decision to credit Dr. Antiaris's opinion over those of Delmonte and Calahan. First, Dr. Antiaris's opinion was more consistent with "largely normal mental status examination findings in the record" and with Alejandro's own reports that she does not have difficulty getting along with others, interacts with others two to three times per week, attends church once per week, self-grooms, and cares for her children. (Tr. at 105−06.)

Second, the ALJ did not err in weighing the opinion of Dr. Antiaris, a consultative psychiatrist, over those of Alejandro's treating social workers. "At the threshold, the assessment by [a] social worker is ineligible to receive controlling weight" under the treating physician rule "because social workers do not qualify as 'acceptable medical source[s].'" *See Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541 (2d Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)). That does not mean that the opinion of a treating social worker may be discounted without good reason: "[E]ven if an ALJ is 'free to conclude that the opinion of nonacceptable source,' such as a 'licensed social worker [is] not entitled to any weight, the ALJ . . . [must] explain that decision.'" *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 183 (E.D.N.Y. 2011) (alterations in original) (quoting *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)).

Here, the ALJ adequately explained his decision to discount the social workers' opinions. The ALJ found that Calahan's opinion that Alejandro social functioning was seriously impaired did not comport with Alejandro's normal mental status results, including a self-assessment in which Alejandro reported that she can follow instructions and finish what she starts. (Tr. at 105, 543.) Rather, the ALJ found Delmonte's assessment that Alejandro's social functioning was moderately limited to be more consistent with the overall record. (Tr. at 105). Still, the ALJ was not required to privilege Delmonte's assessment over that of Antiaris on account of the former's treating relationships with Alejandro. "An ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." *Mayor v. Colvin*, No. 15 Civ. 0344, 2015 WL 9166119, at *18 (S.D.N.Y. Dec. 17, 2015). Because the ALJ found Antiaris's consultative opinion consistent with the overall record, he was not required to adopt Delmonte's diagnosis of moderate social limitations.

### C. Dr. Iqbal's Submission

Finally, the Appeals Council did not err in declining to consider additional letters submitted by Alejandro's psychiatrist, Dr. Naveed Iqbal, stating that she was unable to work. To be considered by the Appeals Council, new material evidence must relate to the period on or before the date of the hearing decision. *See* 20 C.F.R. § 416.1470(a)(5); *see also Perez v. Chater*, 77 F.3d 41, 45 (2d. Cir. 1996). Dr. Iqbal commenced treatment on October 26, 2015, after the ALJ's October 7 decision. (*See* Tr. at 6, 65, 93−112; Dkt. No. 15.) His opinion is based entirely on consultations outside the scope of the record. Moreover, Dr. Iqbal's opinion does not offer a new or different interpretation of the preexisting record evidence. Thus, the Appeals Council properly excluded the additional evidence. Alejandro is advised that any claim for disability during a period beginning on or after October 7, 2015—the date of the ALJ's decision—must be filed anew with the Social Security Administration. *See* 20 C.F.R. § 416.1470(c).

## IV. Conclusion

For the foregoing reasons, Defendant's motion for judgment on the pleadings is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 9 and to close this case.

SO ORDERED.

Dated: September 11, 2018
      New York, New York

                                              J. PAUL OETKEN
                                          United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*